Kelly, Respondent, vs. Sullivan, Appellant.

*November 20—December 23, 1947.*

For the appellant there was a brief by *Otto M. Schlabach,* and oral argument by *Rudolph M. Schlabach,* both of La Crosse.

For the respondent there was a brief by *Hale, Skemp & Nietsch* of La Crosse, and oral argument by *Thomas H. Skemp.*

FAIRCHILD, J. Appellant's main contention is that his agreement with the respondent was not a valid contract because the recited consideration of $5 was not paid and because no description of the property was given in the writing of November 24, 1945.

If it was otherwise valid, the November 24th agreement would be enforceable even if the phrase, "in consideration of $5," had not been included. It is clear from the rest of the writing that there is ample consideration for the seller's promise to convey a warranty deed, for the buyer in effect promises to pay the sum of $8,600 mentioned in the agreement. There is no failure of consideration. See *Day v. Elmore* (1855), 4 Wis. *190, *196; *Cheney v. Cook* (1858), 7 Wis. *413, *423.

The November 24th agreement, standing alone, would be unenforceable for its failure to describe or give a key to the description of the premises. The Wisconsin statute of frauds, sec. 240.08, Stats. 1945, provides that "every contract . . . for the sale of any lands or any interest in lands shall be void unless the contract or some note or memorandum thereof, expressing the consideration, be in writing and be subscribed by the party by whom the . . . sale is to be made or by his lawfully authorized agent."

The written contract or memorandum required by such a statute need not consist of one writing alone, but may be made up of several. It is not necessary that all the writings constituting the memorandum be signed. It is enough if one is signed and the others, (1) are physically annexed to it, (2) are expressly referred to, or (3) show on their face that they refer to the same transaction. Restatement, 1 Contracts, p. 283, sec. 208; 2 Page, Contracts (2d ed.), p. 2281, sec. 1321.

The respondent contends that the November 24th agreement and the other papers mentioned in the statement of facts should be considered physically attached since they were all kept in the same file. Keeping several documents in the same file for the sake of convenience does not seem to us to be the physical attachment which alone would justify considering the documents together.

There is evidence appearing on the face of the documents indicating reference to the same transaction, but this evidence is not strong enough to warrant holding that the writings together comply with the statute of frauds. The November 24th agreement, signed by both parties, sets forth the purchase price and expressly refers to the loan of $7,400 which the respondent purchaser was to get from the Loan Association. These same facts, together with the names of the parties and a reference to the purchase agreement, later appear on the "Mortgagee's Application for Mortgage Insurance," which in turn expressly re-

fers to the "Mortgagors' Property Description," in which the legal description of the premises, lacking in the November 24th agreement, appears. The "Mortgagee's Application for Mortgage Insurance" and the "Mortgagors' Property Description" were both executed several days after the November 24th agreement. These later papers were not signed by the seller, and there is no writing to show his approval of their terms. Yet they are the only papers which contain a description of the property. It so happens here that the property described on the papers which were signed only by the buyer actually was the property that was the subject matter of the parties' negotiations. However, if we were to say that a subsequent writing which supplies the description of the property, but is unsigned by the seller, is enough when considered with an earlier defective writing, to satisfy the statute of frauds, we would be sanctioning a situation where a buyer could easily work a fraud upon the seller by inserting a description of property which the seller had no intention of selling to him. It would be dangerous and contrary to the purpose of the statute of frauds to give papers which are completely under the control of the buyer the effect of being a part of the seller's agreement unless the seller has signed or acknowledged them in some way. So, while we recognize the existence of several writings in this case, still they do not supply the controlling factor which is the seller's part in the making of a contract of sale of land.

The effect of the statute of frauds, sec. 240.08, Stats. 1945, is qualified by sec. 240.09, which provides: "Nothing in this chapter contained shall be construed to abridge the powers of courts to compel the specific performance of agreements in case of part performance of such agreements." This latter principle is of equal antiquity in our statutes with the principle of the statute of frauds. The ground upon which the remedy of specific performance in cases of part performance rests is that of equitable fraud. If a defendant, after permitting the acts of part performance, were to be allowed to interpose the statute of frauds as a bar to the plaintiff's remedial right, a virtual

fraud upon the plaintiff would thereby be perpetrated. 4 Pomeroy, Eq. Jur. (4th ed.) p. 3345, sec. 1409; *Seaman v. Aschermann* (1881), 51 Wis. 678, 8 N. W. 818; *Booher v. Slathar* (1918), 167 Wis. 196, 167 N. W. 261; *Karrels v. Karrels* (1940), 234 Wis. 44, 290 N. W. 624; *Trebesch v. Trebesch* (1915), 130 Minn. 368, 153 N. W. 754. It follows that the acts of part performance must be done in pursuance of the contract with the purpose of executing the contract and must be done with the consent, express or implied, or the knowledge of the other party. Generally speaking, if a plaintiff buyer, acting under an oral contract and with the assent of the seller, either makes valuable improvements on the land or takes possession of the land, he is entitled to specific performance of the contract. Restatement, 1 Contracts, p. 260, sec. 197; 1 Wis. Anno. Cont. 118.

The record here leaves no doubt about there being a contract between these parties, though it failed to comply with sec. 240.08, Stats. 1945. The respondent in good faith carried out all the acts that were to be done by him in consummating that contract. He secured the loan which was referred to in the agreement of November 24th, signed by both parties. The house in question was under construction by the appellant, but the respondent, with the knowledge and consent of the appellant, not only made substantial improvements, but entered into possession of the premises. The trial court's findings of fact on this issue are as follows:

"7. That thereafter and prior to April 1, 1946, the plaintiff Paul T. Kelly by himself and through his wife Anita J. Kelly supervised the construction of the dwelling and made slight alterations therein, including the changing of windows, the rearrangement of kitchen cabinets, selecting color schemes for the rooms, selecting paint for the woodwork and for the outside of the house, and changing the fireplace from a brick to colonial style.

"8. That thereafter and in reliance upon the agreement of the defendant William C. Sullivan, the plaintiff Paul T. Kelly took possession of the premises in conjunction with the defend-

ant and with the consent of the defendant William C. Sullivan made valuable and substantial improvements on said premises, including the installation of a telephone in his own name, the purchasing and laying of linoleum, the contracting for and the installation of electrical equipment, and electrical outlets, moved his household furnishings onto said premises, and paid on the purchase price of said premises the sum of $700 cash."

The establishment of these facts compels us to conclude, as the trial court did, that the appellant's refusal to perform under the circumstances amounted to the perpetration of a fraud upon the respondent.

Because title to the premises had passed to others, who had not known of appellant's prior arrangements with the defendant, and because the respondent did have at the time suit was begun a cause of action in equity, it was appropriate for the court to grant the alternative relief sought in damages. An alleged error in the computation of damages, although not treated in the briefs, was called to our attention by the appellant in oral argument. The sum of $10,500 was considered to be the fair value of the premises. That amount includes the value of the improvements made on the premises by the respondent. For that reason the respondent ought not to have been awarded the sum of $143, representing what he had spent on those improvements. Any other conclusion will result in duplication of damages because it must be assumed that the $143 worth of improvements was included in the price obtained by the vendor in the sale of the house.

*By the Court.*—The judgment must be modified by deducting from the total damages allowed below the sum of $143, and, as so modified, affirmed. Because this question was not timely raised, respondent to have costs.

FOWLER, J., took no part.