STUESSER and wife, Appellants, v. EBEL and wife, Respondents.

*March 8—April 2, 1963.*

For the appellants there was a brief by *Cameron, Cameron & Shervey,* and oral argument by *Robert O. Weisel,* all of Rice Lake.

For the respondents there was a brief and oral argument by *Edward M. Conley* of Rice Lake.

HALLOWS, J.   The first question is whether the contract is so indefinite as to be void under the statute of frauds.  The contract dated March 30, 1960, described the property as "the real estate owned by the Sellers and located in the Town of Oak Grove, now known as the 'Dobie Inn' and used in the business of the Sellers."  The purchase price was $15,000 of which $3,000 was paid down.  The defendants lived in the tavern which also carried a sideline of groceries.  The building was situated on lots 6 and 7 in the village of Dobie in the town of Oak Grove in Barron county.  The building was

located on the east 62 feet of lots 6 and 7, the balance of the lots to the west was vacant and had an open basement thereon. The defendant LaVern Ebel testified he owned all of lots 6 and 7 and did not specifically point out the boundaries of the property he was selling to the plaintiffs when negotiations were had leading up to the contract. There is conflicting testimony by Chris Stuesser that Mr. Ebel pointed out a boundary between the tavern building and the vacant part of the lots as the property to be purchased and also a boundary beyond the empty basement. The parties hired the same attorney who prepared the contract. Later a deed was prepared from an abstract furnished the attorney by the defendants. The abstract covered the east 62 feet of lots 6 and 7. There is evidence from which the trial court could conclude, which it did, the plaintiffs desired on the closing date to get out of the contract, the liquor license had been granted, and Chris M. Stuesser knew what property he was buying. The trial court did not believe Stuesser's testimony that LaVern Ebel pointed out all of lots 6 and 7 and the Dobie Inn property. Ebel testified he did not point out specifically the boundary lines of what he was selling. These facts are not material on the issue of whether the indefiniteness of description in the contract can be made certain by parol evidence.

The statute of frauds, sec. 240.08, Stats., provides every contract for the sale of land shall be void unless the contract or some memorandum thereof expressing the consideration is in writing and signed by the seller. To comply with the statute, the contract or memorandum must be reasonably definite as to the property sold. *Harney v. Burhans* (1895), 91 Wis. 348, 64 N. W. 1031. Generally, the memorandum must state with reasonable certainty the land to which the contract relates. Restatement, 1 Contracts, p. 278, sec. 207. See Anno. Statute of Frauds—Description of Land, 23

A. L. R. (2d) 6. The description, "the real estate owned by the Sellers and located in the Town of Oak Grove, now known as the 'Dobie Inn' and used in the business of the Sellers," *per se* is indefinite and resort must be had to extrinsic evidence if that is permissible. The trial court relied on *Inglis v. Fohey* (1908), 136 Wis. 28, 116 N. W. 857, for the principle, "That is certain which can be made certain." The *Inglis Case* did not involve the statute of frauds but the degree of certainty required by a court of equity to grant specific performance of a contract. However that may be, the rule of the case has been often cited and followed as applying to the statute of frauds. Two examples are *Wisconsin Central R. Co. v. Schug* (1914), 155 Wis. 563, 145 N. W. 177, and *Kuester v. Rowlands* (1947), 250 Wis. 277, 26 N. W. (2d) 639, wherein the extrinsic evidence was used to identify the property referred to in the contract.

Before parol evidence can be used to make reasonably certain an indefinite description of property for purposes of satisfying the statute of frauds, the description in the memorandum must furnish some foundation, link, or key to the oral or extrinsic testimony which identifies the property. *Kelly v. Sullivan* (1947), 252 Wis. 52, 30 N. W. (2d) 209; *Durkin v. Machesky* (1922), 177 Wis. 595, 188 N. W. 97; *Thiel v. Jahns* (1947), 252 Wis. 27, 30 N. W. (2d) 189. In the *Thiel Case* we stated the description must be sufficient so the function of the parol evidence is limited to identification and held insufficient a memorandum referring to "house at Little Chicago" which was located on one and one-half acres and about one-half acre of which included the house and gardens inclosed by a fence. There, parol evidence showed either all of the one and one-half acres, the half acre or even less could have been meant by the terms of the memorandum and to establish the description of the land intended to be conveyed it would have been necessary to give independent effect to the parol understanding as to the quantity of land

involved. This was considered not identification but supplying a portion of the description by parol and establishing by extrinsic evidence what property was intended to be sold. If the description in the memo had included "inclosed by a fence" the memo would have contained the foundation or link and would have been made certain by the existence of the fence. The *Thiel Case* is on all fours with the instant case. The defendants owned all of lots 6 and 7. Dobie Inn describes a tavern but not the boundaries of the land. From the description in the contract there are no indicia that only the east 62 feet of lots 6 and 7 owned by the defendants was to be included. True, the description referred to real estate "used in the business of the Sellers" but there is no parol evidence excluding the westerly part of the lots within the concept of identification.

Descriptions containing some indicia or token establishing a link between the contract and the extrinsic evidence have been held to be sufficient in several cases: "My property located on Depo road Hy. 23 & 49 in the town of Brooklyn consisting of 2-family modern home. Restaurant & auto service station & repair garage known as Wesner Bros. property," *Kruger v. Wesner* (1956), 274 Wis. 40, 47, 79 N. W. (2d) 354; "land . . . in sections 9 and 10 in the town of Greenfield, consisting of 110 acres more or less," *Spence v. Frantz* (1928), 195 Wis. 69, 70, 217 N. W. 700; "my property—farm in sec. 13, Town of Genesee, Waukesha County," *Kuester v. Rowlands* (1947), 250 Wis. 277, 26 N. W. (2d) 639. Such descriptions have been construed to be sufficient when it is shown the seller owned all the property and no other property at such locality. Here, only part of two lots owned by the sellers was intended to be sold and there is no credible evidence to determine to a reasonable certainty that only the east 62 feet of those lots was indicated by the language of the contract.

It is probably true the plaintiffs knew the tavern only included the east 62 feet of lots 6 and 7 but this does not satisfy the statute of frauds. Nor is the fact the plaintiffs desired to get out of the contract or amended their pleadings during the trial important. *Brandeis v. Neustadtl* (1860), 13 Wis. 158 (*142). Viewing certain premises and describing them as a "house and lot" in the memo is not sufficient. *Wirthwein v. Dailey* (1923), 182 Wis. 200, 196 N. W. 221. In *Kelly v. Sullivan, supra,* the record left no doubt about the contract or the identity of the property but it was not described in the contract and therefore the contract was void. It is not what the parties to the contract know but what they put in the contract as the description, that is the test. All the terms of an oral agreement may be definite but the contract is void unless it or a memorandum meets the call of the statute. The indefiniteness of a description for the purpose of the statute of frauds is not to be treated as an ambiguity in the contract and resolved by principles applicable to ambiguities of valid contracts. The test of materiality of evidence in such cases rests on different and broader principles. Not much would be left of the statute of frauds if all parol evidence were probative to make certain the uncertainties of a memorandum.

The testimony of the town chairman, to the effect the property described in the application and the liquor license was lot 6, block A, in the village of Dobie and he did not know what land was included in the Dobie Inn property, does not provide the answer to a reasonable certainty. The testimony of Mrs. Ebel who pointed out all of lots 6 and 7 after the plaintiffs refused to close the sales goes to what was intended to be conveyed, not the identification of the property described in the contract. The type of extrinsic evidence which best serves the function of identification are facts existing or pre-existing at the time the contract is entered into to which reference is made or indicated in the contract, and if the process of identification is repeated would lead to the

same result. We conclude the description in the contract was too indefinite to satisfy the statute of frauds and the parol evidence properly considered could not make it reasonably certain.

The trial court, viewing the evidence as presenting the question of whether a vendee in default of a valid contract could recover his down payment, relied on *Schwartz v. Syver* (1953), 264 Wis. 526, 59 N. W. (2d) 489. That case adopted the more-liberal rule of allowing the defaulting vendee the right, with some limitation, to recover so much of his down payment as he could show amounted to unjust enrichment of the seller. In so doing, we stated the majority rule of denying recovery applied to a vendee of a contract void under the statute of frauds, relying on 55 Am. Jur., Vendor and Purchaser, p. 927, sec. 535. However, the majority rule arose in jurisdictions with statutes of frauds providing a contract not meeting the call of the statute was unenforceable, not void as in this state. The unenforceable-void distinction and the legal effects of each was pointed out in *Brandeis v. Neustadtl, supra,* which first considered the question of whether a vendee of a contract void under the statute of frauds could recover his down payment when no rule of public policy or good morals has been violated. The question was reserved but the opinion indicated the vendee was entitled to recover his down payment. In *Thomas v. Sowards* (1870), 25 Wis. 631, it was so held. This doctrine of recovery on the doctrine of unjust enrichment of a down payment made on a contract void under the statute has been followed in *Durkin v. Machesky* (1922), 177 Wis. 595, 188 N. W. 97; *Merten v. Koester* (1929), 199 Wis. 79, 225 N. W. 750; and affirmed as recently as 1960 in *Arjay Investment Co. v. Kohlmetz,* 9 Wis. (2d) 535, 101 N. W. (2d) 700. The dicta in *Schwartz* to the contrary is overruled.

In the instant case the defendants proved expenses in moving to and from the tavern, legal fees, and other items amounting somewhere between $750 and $1,000; loss of bargain and opportunity to sell the tavern to others was not definitely proved but is of no importance under the void contract. Since the recovery by the vendee of the money paid on a contract void under the statute of frauds is governed by equitable principles, such recovery should be based upon the universally recognized moral principle that one who has received a benefit has the duty to make restitution when to retain such benefit would be unjust. *Arjay Investment Co. v. Kohlmetz, supra.* We consider the retention by the sellers of the down payment in excess of their expenses incurred in reliance upon the void contract to be unjust. This point was not examined or discussed in *Merten v. Koester, supra,* which denied the seller the expense of a broker's commission as an offset against the vendee's recovery, and was not raised in any of the other cases considering the right of the vendee to recover the payment made. The application of this equitable principle qualifies the holding in *Merten.*

*By the Court.*—Judgment is reversed, with directions to enter judgment for the plaintiffs for the sum of $2,000.

WILKIE, J., took no part.